**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| COMPASS BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:10-CV-413 CAS |
| | ) | |
| EAGER ROAD ASSOCIATES, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This diversity matter is before the Court on defendants' motion to dismiss or, in the alternative, to stay this action based on the pendency of a related action in state court. Defendants contend that the same parties are litigating the same subject matter of plaintiff's First Amended Complaint in a first-filed action in state court, and dismissal of this action is therefore warranted under the <u>Colorado River</u> abstention doctrine.[1] Plaintiff opposes the motion and it is fully briefed. For the following reasons, the Court will deny the motion to dismiss and the alternative motion to stay.

**Factual Background**

This action arises out of a dispute over a commercial development project in Brentwood, Missouri. In December 2000, defendant Eager Road Associates, LLC ("ERA") and non-party the City of Brentwood, Missouri ("City") entered into a Redevelopment Agreement under which ERA would develop an office and retail mixed-use project at 8300 Eager Road, which became known as "The Meridian at Brentwood." The Redevelopment Agreement was subsequently amended seven

---

[1]<u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800 (1976).

times. The Seventh Amendment to the Redevelopment Agreement ("Seventh Amendment"), executed in December 2007, includes a provision that a certain percentage of retail and office space in the project was to be leased by November 1, 2009 (the "Lease-Up Period Requirement"), and failure to meet this requirement would trigger a "Mandatory Tender Event." A Mandatory Tender Event in turn triggers certain actions and obligations under the parties' various agreements, including ERA's obligation to pay the City the "Reimbursement Amount" as defined in the Seventh Amendment.

In connection with ERA's execution of the Seventh Amendment, its principals–individual defendants Musick, Busch and Skop (collectively the "Guarantors")–executed a document titled "Guaranty," under which the Guarantors, jointly and severally, guaranteed to pay the Reimbursement Amount to the City, or cause it to be paid, if ERA did not pay the Reimbursement Amount in full on the due date. The Guarantors also entered into a "Shortfall Guaranty Agreement" with Compass.

The City's obligations under the Redevelopment Agreement involved issuing two series of revenue bonds that would help to pay for public improvements and land acquisition associated with the project. In December 2007, the City entered into a Trust Indenture with UMB Bank, N.A. ("UMB") as trustee ("Trustee"). The City contracted with Compass to issue two letters of credit in favor of UMB that served to reduce the interest costs the City paid on the bonds.

Compass and ERA also entered into a Developer Reporting Agreement, in which ERA agreed to provide Compass with information from the project, including status reports on leases and sales, and a notice that the leasing requirements under the Redevelopment Agreement were met. ERA represented in Section 4(k) of the Developer Reporting Agreement that it was not in default

2

in the "performance, observance, or fulfillment of any of the obligations, covenants or conditions of the Developer contained in any Financing Document to which it is a party which default remains uncured at the expiration of the applicable cure period set forth therein." Compass contends that at the time ERA entered into the Developer Reporting Agreement, it knew or should have known it was in default of Section 6.3 of the Redevelopment Agreement, which requires the City and ERA to "cooperate and take all reasonable actions necessary" to ensure that the appropriate tax revenues are remitted by the City and deposited into the proper accounts.

In September 2009, ERA requested an extension of the Lease-Up Period Date from Compass. In October 2009, Compass sent ERA a Notice of Default, which stated that Compass would not consent to the requested extension of the Lease-Up Period Date. In November 2009, Compass sent ERA a letter advising that the Lease-Up Period Requirements were not met and that the Mandatory Tender Event had occurred.

Based on the declaration of a Mandatory Tender Event, on approximately November 22, 2009, UMB as Trustee informed the bondholders that Compass had declared an event of default and that all bonds were subject to mandatory purchase pursuant to the parties' agreements. The Trustee caused the bonds to be repurchased. Compass, by its First Amended Complaint, seeks to recover from ERA and the Guarantors the amounts it expended under the letters of credit upon the declaration of the Mandatory Tender Event.

**Procedural Background**

    1. The State Action

ERA and the Guarantors filed an action in the Circuit Court of St. Louis County, Missouri (the "State Action") on February 12, 2010. The State Action arises out of The Meridian at

Brentwood development project, and names as defendants Compass, UMB Bank, N.A., and the City

of Brentwood, Missouri. UMB and the City are not parties to the instant action. The State Action

petition contains the following counts:

> Count I – ERA's claim for declaratory judgment against Compass, seeking a declaration that Compass unreasonably withheld consent to ERA's request for an extension of the Final Lease-Up Period Date;

> Count II – ERA's claim for breach of contract against Compass, that Compass breached the Seventh Amendment to the Redevelopment Agreement (to which it is bound although it is not a party thereto) by unreasonably withholding consent to ERA's request for an extension of the Final Lease-Up Period Date;

> Count III – ERA's claim for breach of the duty of good faith and fair dealing against Compass by unreasonably withholding consent to ERA's request for an extension of the Final Lease-Up Period Date;

> Count IV – ERA's claim for declaratory judgment against UMB, seeking declarations that (1) UMB is contractually obligated to follow the City's determination of whether a Mandatory Tender Event has occurred, and (2) no Mandatory Tender Event has occurred as ERA has satisfied all of its duties and obligations under the Redevelopment Agreement, as amended;

> Count V – ERA's claim for breach of contract against the City, that the City breached the Redevelopment Agreement by improperly applying the sales taxes and property taxes it collected from tenants at The Meridian at Brentwood, which caused Compass to wrongfully deny ERA's request for an extension of the Final Lease-Up Period Date and to wrongfully declare a Mandatory Tender Event;

> Count VI – the Guarantors' claim for declaratory judgment against the City and Compass, seeking declarations that (1) the City and/or Compass do not have the right to declare a Mandatory Tender Event under the Redevelopment Agreement, where they unreasonably withheld consent to ERA's request for an extension of the Final Lease-Up Period Date, and (2) the Guarantors are not obligated to make any payments to the City and/or Compass under the Guaranty;

> Count VII – ERA's claim for declaratory judgment against the City, Compass, and UMB arising out of a Transportation Development District ("TDD") formed under Missouri law by ERA, seeking declarations that (1) defendants are not permitted to amend the payment priority schedule of a TDD tax revenue account known as the "Captured TDD Account" without ERA's consent, (2) the City's alteration of the schedule for distribution of funds in the Captured TDD Account by virtue of an

4

agreement between the City and UMB titled "First Supplemental Trust Indenture" is a breach of the Seventh Amendment, (3) ERA has not given its consent to the City's execution of the First Supplemental Trust Indenture, and (4) the First Supplemental Trust Indenture is null and void; and

Count VIII – ERA's claim for breach of contract against the City based on the City's execution of the First Supplemental Trust Indenture modifying the priority schedule for distribution of funds in the Captured TDD Account, which is a breach of the Seventh Amendment.

2. Federal Court Action

Compass filed the instant action against ERA and the Guarantors on March 9, 2010. The instant action also arises out of The Meridian at Brentwood project. Compass asserts the following claims in its First Amended Complaint:

Count I – against ERA for breach of the Redevelopment Agreement for failure to pay the Reimbursement Amount to the City upon the occurrence of the Mandatory Tender Event;

Count II – against the Guarantors for breach of the Guaranty, for failure to pay the City the Reimbursement Amount as required by the Guaranty, upon ERA's failure to pay the Reimbursement Amount as required by the Redevelopment Agreement;

Count III – against the Guarantors for breach of the Shortfall Guaranty Agreement, for failure to pay Compass the Shortfall Guaranty up to the Guaranteed Amount;

Count IV – against ERA for breach of the Developer Reporting Agreement, for failure to perform or observe the conditions or provisions of Sections 4(k) and 5(a) thereof;

Count V – against ERA for negligent misrepresentation (1) that ERA was not in default under Section 4(k) of the Developer Reporting Agreement, and (2) for failing to take all reasonable steps to ensure that the proper tax revenues were collected by the City and deposited into the designated accounts; and

Count VI – against ERA for intentional misrepresentation (1) that ERA was not in default under Section 4(k) of the Developer Reporting Agreement, and (2) for failing to take all reasonable steps to ensure that the proper tax revenues were collected by the City and deposited into the designated accounts.

**Legal Standard**

The Colorado River abstention doctrine grants a federal court discretion to avoid duplicative litigation in federal court of a matter more properly decided in parallel litigation in state court. See Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coops., Inc., 48 F.3d 294, 297 (8th Cir. 1995). The mere potential for conflict between a federal action and a parallel state action, however, does not justify staying the exercise of federal jurisdiction under Colorado River. Id. (citing Colorado River, 424 U.S. at 816). As the Supreme Court explained in Colorado River, and the Eighth Circuit Court of Appeals has repeatedly reiterated, a federal court may abstain in order to conserve federal judicial resources only in "exceptional circumstances." Colorado River, 424 U.S. at 813; see Dominium Austin Partners, L.L.C. v. Emerson, 248 F.3d 720, 727 (8th Cir. 2001) ("A federal court should decline jurisdiction [on the basis of Colorado River abstention] only under exceptional circumstances."); Federated Rural Elec. Ins., 48 F.3d at 297 (also stating the "exceptional circumstances" standard). The "exceptional circumstances" must be such that "repair to the State court would clearly serve an important countervailing interest." Id. (internal punctuation and quoted case omitted).

Several factors are to be evaluated in determining the existence of "exceptional circumstances" under Colorado River:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority-not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

Federated Rural Elec. Ins., 48 F.3d at 297.  In making its decision, a court must take into account "both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise."  Colorado River, 424 U.S. at 818.

"The presence of parallel proceedings is a prerequisite for the application of Colorado River abstention because, unless a parallel state-court action exists, the federal district court would have nothing in favor of which to abstain."  Fru-Con Constr. Corp. v. Controlled Air, Inc., 574 F.3d 527, 544 (8th Cir. 2009) (J. Shepherd, dissenting, for a majority of the Court) (quoted case, quotation marks and brackets omitted).

**Discussion**

As stated above, the Court must first determine that this action and the State Action are parallel before it may proceed to apply the Colorado River analysis.  "The prevailing view is that state and federal proceedings are parallel for purposes of Colorado River abstention when substantially similar parties are litigating substantially similar issues in *both* state and federal court."  Fru-Con, 574 F.3d at 535.  The Eighth Circuit, however, "requires more precision."  Id.

"The pendency of a state claim based on the same general facts or subject matter as a federal claim and involving the same parties is not alone sufficient."  Id. (citing Federated Rural Elec. Ins., 48 F.3d at 297).  "Rather, a substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court."  Id.  (cited case omitted).  "This analysis focuses on matters as they currently exist, not as they could be modified.  Moreover, in keeping with the Supreme Court's charge to abstain in limited instances only, jurisdiction must be

7

exercised if there is any doubt as to the parallel nature of the state and federal proceedings." Id. (citations omitted).

The Court concludes that the instant action and the State Action are not "parallel" as required for consideration of <u>Colorado River</u> abstention, even though the claims in the two actions arise from the same basic facts of the parties' contractual relationship surrounding the development of The Meridian at Brentwood. This is because the two disputes do not present substantially similar issues or claims for relief. The nature of the claims asserted in the State Action and the instant action are not such that there is a "substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." <u>Fru-Con</u>, 574 F.3d at 535.

As set forth above, in Counts I through IV of the instant action, Compass asserts claims against ERA and the Guarantors for breach of four separate agreements–the Redevelopment Agreement, the Guaranty, the Shortfall Guaranty Agreement, and the Developer Reporting Agreement–and seeks damages for each alleged breach. In contrast, in Counts I through III of the State Action, ERA and the Guarantors assert claims for declaratory judgment, breach of contract, and breach of the duty of good faith and fair dealing against Compass, all based on the allegation that Compass unreasonably withheld consent to ERA's request for an extension of the Final Lease-Up Period Date. Compass has no opportunity in the State Action to assert its claims for breach of contract ands seek the damages it claims as a result of ERA and the Guarantors' alleged breach of the various agreements as set forth in the instant action.[2]

---

[2]While Compass could assert counterclaims in the State Action, it has not chosen to do so, and the Court examines the State Action as it exists, not as it could be modified. <u>See</u> <u>Fru-Con</u>, 574 F.3d at 535.

In Counts V and VI of the instant action, Compass asserts claims against ERA for negligent and intentional misrepresentation that (1) ERA was not in default under Section 4(k) of the Developer Reporting Agreement, and (2) for failing to take all reasonable steps to ensure that the proper tax revenues were collected by the City and deposited into the designated accounts, and Compass seeks damages based on the alleged misrepresentations. In contrast, in Count V of the State Action, ERA asserts a claim against the City of Brentwood, which is not a party to this action, that the City breached the Redevelopment Agreement by improperly applying sales and property taxes it collected from tenants at The Meridian at Brentwood, which caused Compass to wrongfully deny ERA's request for an extension of the Final Lease-Up Period Date and wrongfully declare a Mandatory Tender Event. Whether or not ERA is successful on Count V in the State Action, nothing in Count V or any other count of the State Action would offer Compass the opportunity to assert its claims for negligent and intentional misrepresentation against ERA and to obtain damages therefor.

In addition, the State Action involves claims against other parties, including the City of Brentwood and UMB Bank, which are not parties to this action and the claims against those parties are not present in this action. Further, the State Action involves claims for relief against Compass that are not present in this action.

In light of the differences in the claims in the two actions and the relief sought, the instant action and the State Action are not "parallel," and therefore the prerequisite for Colorado River abstention is not present in this case. As a result, ERA and the Guarantors' motion to dismiss or to stay this action based on Colorado River abstention should be denied.

**Conclusion**

For the reasons set forth above, the Court finds that defendants ERA and the Guarantors' motion to dismiss or stay this action based on <u>Colorado River</u> abstention should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss or, in the alternative, to stay, is **DENIED**. [Doc. 49]


_____

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this  28th  day of October, 2010.