UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| COMPASS BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:10-CV-413 CAS |
| | ) |
| EAGER ROAD ASSOCIATES, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This diversity matter is before the Court on a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Count II of plaintiff's First Amended Complaint, filed by individual defendants Don C. Musick, III, Adolphus A. Busch, IV, and Alan R. Skop (collectively the "Guarantors"). Count II asserts a claim against the Guarantors for breach of a Guaranty agreement (the "Guaranty") between the Guarantors and non-party the City of Brentwood, Missouri (the "City"). Defendants move to dismiss on the basis that Count II fails to state a claim upon which relief can be granted because plaintiff Compass Bank is not, as a matter of law, an intended third-party beneficiary of the Guaranty. Plaintiff opposes the motion and it is fully briefed. For the following reasons, the Court will deny the motion to dismiss.

**Factual Background**

This action arises out of a dispute over a commercial development project in Brentwood, Missouri. In December 2000, defendant Eager Road Associates, LLC ("ERA") and the City entered into a Redevelopment Agreement under which ERA would develop an office and retail mixed-use project (the "Project") at 8300 Eager Road, which became known as "The Meridian at Brentwood." The Seventh Amendment to the Redevelopment Agreement, executed in December 2007, includes

a provision that a certain percentage of retail and office space in the project was to be leased by November 1, 2009 (the "Lease-Up Period Requirement"), and failure to meet this requirement would trigger a "Mandatory Tender Event." A Mandatory Tender Event in turn triggers certain actions and obligations under the parties' various agreements, including the payment of the Reimbursement Amount to the City as defined in the Seventh Amendment. In connection with ERA's execution of the Seventh Amendment, its principals–the Guarantors–jointly and severally guaranteed to pay or cause to be paid to the City, the "Reimbursement Amount," as that term is defined in the Seventh Amendment. The Guarantors also entered into a "Shortfall Guaranty Agreement" with Compass.

The City's obligations under the Redevelopment Agreement involved issuing two series of revenue bonds (the "Bonds") that would help to pay for public improvements and land acquisition associated with the Project. In December 2007, the City entered into a Trust Indenture with UMB Bank, N.A. ("UMB") as Trustee. The City contracted with Compass to issue two letters of credit in favor of UMB that served to reduce the interest costs that the City paid on the Bonds. Under the terms of the Letter of Credit Reimbursement Agreement ("Reimbursement Agreement") between Compass and the City, the Guarantors' execution of the Guaranty and ERA's execution of the Seventh Amendment were conditions precedent to Compass's issuance of the letters of credit.

Compass and ERA also entered into a Developer Reporting Agreement, in which ERA agreed to provide Compass with information from the project, including status reports on leases and sales, and a notice that the leasing requirements under the Redevelopment Agreement were met. In September 2009, ERA requested an extension of the Lease-Up Period Date from Compass. In October 2009, Compass sent ERA a Notice of Default, which stated that Compass would not consent to the requested extension of the Lease-Up Period Date. In November 2009, Compass sent ERA a

2

letter advising that the Lease-Up Period Requirements were not met and that the Mandatory Tender Event had occurred.

Based on the declaration of a Mandatory Tender Event, on approximately November 22, 2009, the Trustee, UMB, informed the bondholders that Compass had declared an event of default and that all Bonds were subject to mandatory purchase pursuant to the parties' agreements. The Trustee caused the Bonds to be repurchased. Compass, by its First Amended Complaint, seeks to recover from ERA and the Guarantors the amounts it expended under the letters of credit upon the declaration of a Mandatory Tender Event.

**Legal Standard**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff need not provide specific facts in support of its allegations, Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir.), cert. denied, 129 S. Ct. 222 (2008) (citing Twombly, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Id. at 562 (quoted case omitted).

3

This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." Id. at 556.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," id. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Twombly, 550 U.S. at 555-56; Fed. R. Civ. P. 8(a)(2). Materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).[1]

**The Parties' Arguments**

The Guarantors move to dismiss Count II on the basis that Compass is not, as a matter of law, an intended third-party beneficiary of the Guaranty between them and the City, and therefore Count II fails to state a claim against them. In essence, the Guarantors' position is that Compass lacks standing to pursue Count II.

The Guarantors state that under Missouri law, in determining whether a person or entity is a third-party beneficiary of a contract, the question of intent is "paramount" and is to be determined "from the four corners of the contract." OFW Corp. v. City of Columbia, 893 S.W.2d 876, 879 (Mo. Ct. App. 1995). The Guarantors assert that the right to enforce the Guaranty rests only with the City, because the Guaranty only expresses an intent to benefit the City, and there is no language within the "four corners" of the Guaranty expressly declaring the parties' intent to directly benefit Compass. Therefore, the Guarantors argue that under Missouri law, there is a strong presumption

---

[1]The various agreements relating to the Project and issuance of the Bonds are exhibits to the First Amended Complaint. Because these documents are attached to and referenced in the complaint, the Court considers them in connection with this motion to dismiss.

the Guaranty was only intended to benefit the City, and that Compass is not a third-party beneficiary. See OFW, 893 S.W.2d at 879.

The Guarantors also state that a party claiming rights as a third-party beneficiary has the burden to establish that provisions in the contract were intended to be made for its direct benefit, citing Federal Deposit Insurance Corp. v. G. III Investments, Ltd., 761 S.W.2d 201, 204 (Mo. Ct. App. 1988). "Only those third parties for whose primary benefit the contracting parties intended to make the contract may maintain an action." Laclede Investment Corp. v. Kaiser, 596 S.W.2d 36, 41 (Mo. Ct. App. 1980). The Guarantors assert there is no evidence in the Guaranty that the parties directly or clearly contracted for the benefit of Compass, as required by Missouri law. The Guarantors point to the terms of the Guaranty, under which they promised to pay the Reimbursement Amount to the City, not Compass, and which specifically provides that only the City may proceed to protect and enforce its rights thereunder.

With respect to the Guaranty's provision regarding payment of the Reimbursement Amount, the Guarantors admit they guaranteed payment of the amount directly to the City, but under a separate agreement, the Seventh Amendment, the City agreed to turn over the Reimbursement Amount to the Trustee, and under yet another agreement, the Trust Indenture, the Trustee agreed to apply the Reimbursement Amount "for the benefit of" Compass. Thus, the Guarantors argue that if Compass has a claim to any funds related to the Reimbursement Amount, it should be asserted against the Trustee, which is not a defendant in this action. The Guarantors also contend that they may have valid defenses to payment of the Reimbursement Amount to the City, which may in turn have valid defenses to payment of this amount to the Trustee, which may have valid defenses to

5

applying the amount for Compass's benefit, and Compass is attempting to bypass these contractually-prescribed processes by seeking payment directly from the Guarantors.

Compass responds that under Missouri law, "a third-party beneficiary is one who is not privy to a contract or its consideration but who may nonetheless maintain a cause of action for breach of the contract." L.A.C. ex rel. D.C. v. Ward Parkway Shopping Center Co., L.P., 75 S.W.3d 247, 260 (Mo. 2002 ) (en banc). "'[I]t is not necessary for the parties to the contract to have as their "primary object" the goal of benefiting the third parties, but only that the third parties be primary beneficiaries." Id. (quoting Andes v. Albano, 853 S.W.2d 936, 942 (Mo. 1993) (en banc)). Compass asserts that a contract need not name the third-party beneficiary, but the terms of the agreement must clearly and directly express an intent to benefit an identifiable person or class. L.A.C., 75 S.W.3d at 260. Compass states that under Missouri law, "A creditor beneficiary is 'one upon whom the promisee intends to confer the benefit of the performance of the contract and thereby discharge an obligation or duty the promisee owes the beneficiary.'" Realty Resource, Inc. v. True Docugraphics, Inc., 312 S.W.3d 393, 398 (Mo. Ct. App. 2010)) (quoting OFW Corp., 893 S.W.2d at 879). Compass argues that it is a creditor beneficiary of the Guaranty because the promisee, the City, was contractually obligated to pay the Reimbursement Amount it receives from the Guarantors to the Trustee, which must transfer it to Compass. Thus, Compass argues the Guarantors' performance under the Guaranty discharges an obligation the City owes to it.

Compass states that under Missouri law "the cardinal principle for contract interpretation is to ascertain the intention of the parties and to give effect to that intent." Butler v. Mitchell-Hugeback. Inc., 895 S.W.2d 15, 21 (Mo. 1995) (en banc) (citing Royal Banks of Missouri v. Fridkin, 819 S.W.2d 359, 362 (Mo. 1991) (en banc). To determine the intent of the parties, Compass asserts

6

that Missouri law requires a court to read all agreements and documents of a transaction together, and not read one agreement from a complex transaction in isolation. Knob Noster R-VIII Sch. Dist. v. Dankenbring, 220 S.W.3d 809, 826 (Mo. Ct. App. 2007). In a situation where "the contract consists of multiple documents, all of the documents 'must be read to capture what was intended.'" Nodaway Valley Bank v. E.L. Crawford Const., Inc., 126 S.W.3d 820, 825 (Mo. Ct. App. 2004) (quoting Butler, 895 S.W.2d at 21). Compass contends the various documents and agreements comprising the complex 2007 Bond transaction should be read together, and when that is done, it is clear the Guaranty was created at Compass's express request and for its primary benefit.

Compass states that the Guaranty expressly provides the Guarantors are obligated to pay the Reimbursement Amount in the event the developer, ERA, fails to do so. Compass asserts that the City–the promisee under the Guaranty–had an absolute and unconditional obligation to reimburse Compass for any draws on the letters of credit issued by Compass, under Section 2.02(e) of the Reimbursement Agreement between Compass and the City. Compass states that the Guarantors' obligations under the Guaranty were triggered by the Mandatory Tender Event, which, by the terms of the Seventh Amendment and the Trust Indenture, caused the Trustee to draw down the Letters of Credit pursuant to the Seventh Amendment and Section 309(a) of the Trust Indenture. The draw-down on the Letters of Credit then obligated the City to reimburse Compass under Section 202(e) of the Reimbursement Agreement. Compass asserts that when all of the transaction documents are properly read together, it is clear the purpose of the Guaranty was for the Guarantors to pay the Reimbursement Amount to satisfy the City's reimbursement obligation to Compass upon the occurrence of a Mandatory Tender Event, if the Reimbursement Amount was not paid by ERA.

7

Compass notes that the Guaranty repeatedly references the Seventh Amendment and various terms that are defined in the Seventh Amendment, including "City," "Redevelopment Agreement," "Reimbursement Amount," and "Default Rate." Compass states that, in turn, the Seventh Amendment (1) describes the Bond transaction, makes repeated references to Compass, and makes it clear that the Seventh Amendment was made to induce the City to issue the Bonds; and (2) references the Trust Indenture and requires that the Trustee deposit the Reimbursement Amount into the Project Fund and then apply those funds according to the Trust Indenture. The Trust Indenture in turn defines and references the Seventh Amendment and the Mandatory Tender Event in requiring that the Trustee apply the funds "solely" for the benefit of Compass. Compass concludes these references evidence the parties' intent that the Trust Indenture be construed with the Seventh Amendment, especially with regard to how the Trustee was to apply the Reimbursement Amount.

Compass also points to language in the Guaranty requiring that notice be given to it in the event there is an adverse change that would prevent any of the Guarantors from honoring their obligation under the Guaranty. This notice obligation requires each of the Guarantors to

> notify the City, with copies to the Trustee and to Compass Bank, as soon as possible after any one or more of the Guarantors acquires knowledge of the occurrence of any event which, in the reasonable judgment of any one or more of the Guarantors, could reasonably be expected to result in a material adverse effect on the ability of any one or more of the Guarantors to perform its obligations hereunder.

Guaranty at 9, ¶ 4(a). Compass argues that although the Guarantors characterize this as a minor obligation, the required notice is of material adverse change and relates directly to the performance of obligations under the Guaranty. Compass argues that nothing could be more relevant to the Guaranty than its performance, so when the Guaranty is viewed as part of the entire deal, it is easy to see why Compass was required to receive notice of a material adverse change relating to one or

more of the Guarantors, because the form of the Guaranty had to be approved by Compass and the money to be paid by the Guarantors was to be delivered to Compass.

Compass also contends that the Guaranty is not a separate document as the Guarantors argue, but rather is part of the Seventh Amendment. Compass notes that the page numbering for the Seventh Amendment continues consecutively into the Guaranty, and states that the Seventh Amendment and the Guaranty are part of the Bond transaction that involves several documents including the Trust Indenture, the Reimbursement Agreement, the letters of credit, and the Redevelopment Agreement, all of which were entered into at the time of the Bond issuance.

Based on the foregoing, Compass contends the Guaranty and Seventh Amendment were integral parts of the Bond transaction, and all the transaction documents must be read together to understand the intent of the parties and determine whether Compass was an intended beneficiary under the Guaranty. Compass argues there is no doubt the Guaranty was executed at its insistence and was intended for its primary benefit and to satisfy the City's reimbursement obligation under the Reimbursement Agreement.

The Guarantors reply that Compass is not an intended third-party beneficiary of the Guaranty as a matter of law, because the Guaranty contains no express declaration of the Guarantors' intent to confer upon Compass the right to enforce it, as required by Missouri law, citing Laclede Investment Corp., 596 S.W.2d at 42. The Guarantors reiterate that the Guaranty itself is the only document that may be considered in determining whether the Guarantors intended to confer third-party beneficiary status on Compass, citing Laclede, 596 S.W.2d at 41-42, and therefore the Court may not consider any of the other "collateral" documents. The Guarantors state that the Guaranty

itself does not indicate that it is for Compass's benefit, or that Compass has the right to enforce it, and therefore Compass is not an intended third-party beneficiary.

The Guarantors also contend that even if the collateral documents were considered, they do not evidence a "direct benefit" or "direct obligation" to Compass, as the collateral documents are agreements between separate parties, and therefore would establish at most that Compass is an incidental beneficiary to the Guaranty. The Guarantors state that under Missouri law, an incidental beneficiary has no right to enforce an agreement, citing OFW, 893 S.W.2d at 879.

The Guarantors argue that the cases Compass cites for the proposition the Guaranty must be read together with other documents are distinguishable because they do not address the issue of third-party beneficiary status, and do not counter clear Missouri law that the intent to benefit must be found within the subject document itself. The Guarantors also assert that the cases Compass cites which do address third-party beneficiary status require that an intent to benefit be found within the subject agreement itself, which is absent here.

**Discussion**

In a diversity action, state law governs the rules for construing contractual agreements. Orion Fin. Corp. of S. Dak. v. American Foods Group, Inc., 281 F.3d 733, 738 (8th Cir. 2002). The parties agree that Missouri law governs this action. In determining the scope of Missouri law, this Court is bound by the decisions of the Supreme Court of Missouri. Taylor v. St. Louis County Bd. of Election Comm'rs, 2010 WL 4273252, at *2, __ F.3d __ (8th Cir. Nov. 1, 2010). Decisions from the Missouri Court of Appeals are also relevant, and "must be followed when they are the best evidence of Missouri law." Id., n.2 (quoting Bockelman v. MCI Worldcom, Inc., 403 F.3d 528, 531 (8th Cir. 2005)).

The Missouri Supreme Court has stated that the "cardinal principle for contract interpretation is to ascertain the intention of the parties and to give effect to that intent." Butler, 895 S.W.2d at 21 (citing Royal Banks, 819 S.W.2d at 362). "In order to determine the intent of the parties, it is often necessary to consider not only the contract between the parties, but 'subsidiary agreements, the relationship of the parties, the subject matter of the contract, the facts and circumstances surrounding the execution of the contract, the practical construction the parties themselves have placed on the contract by their acts and deeds, and other external circumstances that cast light on the intent of the parties.'" Butler, 895 S.W.2d at 21 (quoting Royal Banks, 819 S.W.2d at 362). In a situation where "the contract consists of multiple documents, all of the documents 'must be read to capture what was intended.'" Nodaway Valley Bank v. E.L. Crawford Const., Inc., 126 S.W.3d 820, 825 (Mo. Ct. App. 2004) (quoting Butler, 895 S.W.2d at 21).

The Missouri Supreme Court has held that the rules of construction applicable to other contracts apply to a guaranty agreement, with some limitations:

> A guaranty, a species of contract, is a collateral agreement for another's undertaking and is an independent contract that imposes responsibilities different from those imposed in the agreement to which it is collateral. The rules of construction applicable to other contracts apply to a guaranty. However, the liability of a guarantor is to be strictly construed according to the terms of the guaranty agreement and may not be extended by implication beyond the strict letter of the obligation. Nonetheless, such strict construction does not entitle a guarantor to demand an unfair and strained interpretation of the words used in order that it may be released from the obligation that it has assumed.

Dunn Indus. Group, Inc. v. City of Sugar Creek, Mo., 112 S.W.3d 421, 434 (Mo. 2003) (en banc) (internal citations omitted). The Missouri Supreme Court has also held that a "guaranty agreement may be construed together with any contemporaneously executed agreements dealing with the same subject matter as an aid in ascertaining the intention of the parties." Id. "Those agreements,

11

however, do not constitute a single contract, and the liability of the guarantor remains primarily dependent on the guaranty agreement itself." Id. Further, "Any ambiguity in a guaranty agreement should arise in the first instance from the agreement itself, and neither a court nor the parties will be permitted to create an ambiguity where none exists."

The Missouri Supreme Court explained in Dunn that there are two categories of guaranties, general and special. Id. "A general guaranty is addressed to persons generally and is assignable under the principles of contract law. On the other hand, a special guaranty is addressed to a particular person." Id. (internal citations omitted) "As a general rule, a guaranty addressed to a particular person may only be acted upon and enforced by such party." Id. (citations omitted). "Where, however, a guaranty is intended by both parties to be for the benefit of someone other than the addressee or named obligee, a guaranty is not special despite being addressed to a specific person." Id. (citation omitted). In Dunn, the Missouri Supreme Court examined the guaranty at issue together with the related construction agreement to determine that a non-party to the guaranty had the right to enforce it. Id. at 435.

Under Missouri law, "A third party beneficiary is one who is not privy to a contract or its consideration but who may nonetheless maintain a cause of action for breach of the contract." Andes, 853 S.W.2d at 942. "Only those third parties for whose primary benefit the parties contract may maintain an action." Id. "[I]t is not necessary for the parties to the contract to have as their 'primary object' the goal of benefiting the third parties, but only that the third parties be primary beneficiaries." Id. Missouri recognizes several types of third-party beneficiaries but, as relevant here, a person or entity is a creditor beneficiary if the promisor's performance of the promise will satisfy an actual, supposed or asserted duty the promisee owed to the beneficiary. . Slate v. Boone

County Abstract Co., 432 S.W.2d 305, 307 (Mo. 1968) (citing Restatement (First) of Contracts § 133 (1932)); see also Wood v. Centermark Props., Inc., 984 S.W.2d 517, 527 (Mo. Ct. App. 1998).

Because the Guaranty is addressed to the City, under general principles of Missouri law it is a special guaranty and may only be enforced by the City, unless it was intended by both parties to be for the benefit of Compass. See Dunn, 112 S.W.3d at 434. The issue is whether the Guaranty was intended by the parties to be for the benefit of Compass. If so, it may be enforced by Compass as a creditor beneficiary. See id.

The Dunn decision authorizes this Court to look beyond the four corners of the Guaranty and construe it together with the related, contemporaneously-executed documents to determine if the parties intended to benefit Compass by entering into the Guaranty. The Court finds it appropriate to do so under the facts alleged in the First Amended Complaint, as this case involves a complex transaction with multiple interrelated documents, the Guaranty references and appears to be a part of the Seventh Amendment, and was executed to induce the City to enter into the Seventh Amendment and was a condition precedent to Compass's issuance of the letters of credit.

The Guaranty's language makes clear it is part of the complex Bond transaction concerning the Project entered into among the Guarantors, ERA, the City, UMB and Compass in December 2007. The Guaranty acknowledges that it will benefit the Guarantors, as principals of the developer ERA, and was executed in order to induce the City to enter into the Seventh Amendment with ERA, under which the City was obligated to turn over the Reimbursement Amount to the Trustee, which in turn would transfer it to Compass. The Guaranty includes many references to terms used and defined in the Seventh Amendment. Based on a review of the various documents, there can be no question the Guarantors were aware of the terms of the various agreements relating to the City's

13

2007 Bond issuance in connection with ERA's development of the Project, including the Seventh Amendment, the Reimbursement Agreement, and the Trust Indenture.

The Seventh Amendment provides that the City would issue Bonds for the Project after "Compass Bank agrees to provide a direct-pay letter of credit facility to provide credit enhancement and liquidity for each series of the Series 2007 Bonds . . . ." (Seventh Amendment at 3, § 2). The Seventh Amendment provides that if a Mandatory Tender Event occurs, ERA or the Guarantors are to reimburse the City for all proceeds of the Series 2007 Bonds, and the City is to transfer this Reimbursement Amount to the Trustee, UMB, to be applied by the Trustee as provided in the Indenture. (Id., § 3). The Indenture, in turn, provides that the Trustee is to apply the Reimbursement Amount " solely for transfer" to Compass Bank. (Trust Indenture, § 404(d)).

Under these circumstances, and accepting as true the factual allegations contained in the First Amended Complaint, the Court finds the complaint states a claim to relief that is plausible on its face and that issues of fact exist as to the parties' intent to benefit Compass in executing the Guaranty. As a result, the Court finds the Guarantors have not established they are entitled to dismissal of Count II as a matter of law.

**Conclusion**

For the reasons set forth above, the Court finds that the Guarantors' motion to dismiss Count II should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss Count II is **DENIED**.

[Doc. 50]

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  9th  day of November, 2010.